**AKERMAN LLP**
Evelina Gentry (SBN 296796)
*evelina.gentry@akerman.com*
Jonathan M. Turner (SBN 320614)
*jonathan.turner@akerman.com*
601 W. Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

Samual A. Miller (*Pro Hac Vice* application forthcoming)
*samual.miller@akerman.com*
420 South Orange Avenue, Suite 1200
Orlando, FL 32801
Telephone: (407) 423-4000
Facsimile: (407) 843-6610

*Attorneys for Plaintiff*
CHEP USA

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION, LOS ANGELES**

| | |
|---|---|
| CHEP USA,<br><br>      Plaintiff,<br><br>vs.<br><br>L.A. PALLETS INC., and DOES 1 through 10, inclusive,<br><br>      Defendants. | Case No.: 2:23-CV-05771<br><br>**VERIFIED COMPLAINT FOR BREACH OF CONTRACT, CONVERSION, DECLARATORY JUDGMENT, AND REPLEVIN** |

Plaintiff CHEP USA ("CHEP" or "Plaintiff"), respectfully files this Verified Complaint against L.A. PALLETS INC. ("L.A. Pallets").

**PARTIES**

1. Plaintiff CHEP USA is a New York partnership with a principal place of business at 5897 Windward Parkway, Alpharetta, Georgia 30005. The partners of CHEP USA are Brambles North America Incorporated and Brambles Industries, LLC. Brambles North America Incorporated is a Delaware Corporation with its principal office at 5897 Windward Parkway, Alpharetta, Georgia 30005. Brambles Industries, LLC is a Delaware LLC with its principal office at 5897 Windward Parkway, Alpharetta, Georgia 30005. The sole member of Brambles Industries, LLC is Brambles North America Incorporated, a Delaware Corporation with its principal office at 5897 Windward Parkway, Alpharetta, Georgia 30005. CHEP is thus a citizen of the State of Delaware and a citizen of the State of Georgia for purposes of 28 U.S.C. § 1332(a).

2. According to the California Secretary of State's website, L.A. Pallets is a California Corporation with a Principal Address at 13233 S. Alameda Street, Compton, California 90221. L.A. Pallets' Agent of Service of Process is Ariel Miranda Martinez also located at 13233 S. Alameda Street, Compton, California 90221. L.A. Pallets is thus a citizen of the State of California for purposes of 28 U.S.C. § 1332(a).

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) (diversity jurisdiction) because this is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Among other relief, CHEP seeks to recover damages for L.A. Pallets' breach of contract, as well as the value of each CHEP Pallet, as hereinafter defined, that L.A. Pallets has (i) improperly retained, (ii) transferred to another individual or entity, and/or (iii) permanently destroyed beyond repair. Based on CHEP's limited observations, L.A. Pallets improperly took control of, used, transferred, and/or damaged and destroyed thousands of CHEP pallets that have a cost of twenty-six dollars ($26) each. CHEP does not currently have knowledge of the precise number of CHEP pallets that have been transferred or destroyed by L.A. Pallets, as such details are expected to be exclusively in L.A. Pallets'

possession, custody, or control. Further, CHEP is entitled to recover the lost profit that CHEP would have earned for each CHEP pallet that CHEP was not able to lease through its pallet pool. This would include not only the CHEP pallets identified above, but also the CHEP Pallets that CHEP is not able to recover. The calculation of such damages would be as follows:

> The number of pallets L.A. Pallets improperly retained multiplied by the number of times each pallet is cycled through CHEP's pallet pool each year and leased out as part of CHEP's pallet pool multiplied by the number of years (or fraction thereof) that L.A. Pallets improperly retained CHEP's pallets multiplied by the amount of profit CHEP would have obtained as a result of each rental cycle per pallet.

Given that L.A. Pallets has wrongfully possessed, transferred, and or destroyed thousands of CHEP pallets since at least June of 2021, the aggregated amount of CHEP's damages exceeds the $75,000 threshold for federal court jurisdiction.

5. This Court has personal jurisdiction of L.A. Pallets because (i) L.A. Pallets resides in California, (ii) L.A. Pallets maintains and operates its principal place of business in California, and (iii) the CHEP pallets at issue in this action are located in California.

6. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because (i) L.A. Pallets resides in this judicial district, (ii) a substantial part of the events or omissions giving right to CHEP's claims occurred in this judicial district, and (iii) the property at issue is currently located in Compton, California, which is within this judicial district.

7. All conditions precedent to bringing this action have been performed or have occurred.

## FACTUAL BACKGROUND

### Pallets and Commerce

8. Typically, wooden pallets are used for the purpose of hauling, loading, and unloading, and storing goods as those goods move in commerce from their manufacturers to distributors to wholesalers and finally to retailers, where they are made available for purchase by the average consumer.

9. In general, the majority of pallets circulating in the United States are common white pine pallets that come in varying shapes, sizes, and levels of quality and bear no trademarks or names. These pallets, bearing no coloring or demarcation, are often called white wood pallets.

10. In general, these pallets are bought by manufacturers who place their products on these wooden pallets. The manufacturers then sell their product, along with the white wood pallet, to their distributors. The distributors then reuse these white wood pallets and sell the excess to pallet dealers or recyclers, who may repair the pallets and resell them to those in need of pallets, mulch the pallets, or otherwise dispose of them.

11. The strength of a pallet is crucial to its usefulness. Pallets that are not adequately inspected and maintained are prone to breakage because of the constant handling by manufacturers, distributors, and retailers. Such breakage often results in damage to the goods being transported and, at times, injuries to the individuals working with or around the pallet.

### CHEP Pallets

12. CHEP offers a better option for the pallet needs of manufacturers and/or distributors of products and goods.

13. Instead of purchasing new or recycled pallets for each shipment, manufacturers can lease pallets from CHEP as part of a national pallet pool. CHEP, which operates over 150 CHEP service centers across the United States, leases its pallets pursuant to its form of pallet Rental Agreement.

14. Through CHEP's national pallet pool, manufacturers receive and ship products on uniform, high-quality pallets owned and maintained by CHEP, and the pallets, after being inspected and repaired (if necessary), are used over and over again by the manufacturers to ship their products.

15. CHEP has invested significant resources, in time and money, in maintaining superior, reliable, and safe pallets.

16. The CHEP pallet pool rental system involves the shared use of high-quality pallets by multiple customers or users. Although there are variations, the following is a general explanation of how the system works. CHEP leases its pallets to manufacturers who use the CHEP pallets as a platform for the transportation of goods to their distributors. The distributors, in turn, use the CHEP pallets within their distribution system until the original manufacturer's product is emptied from the pallet. The empty pallets are then set aside for return to or collection by CHEP. At CHEP's service centers across the country, the empty CHEP pallets are inspected, cleaned, repaired and/or repainted (if necessary), and then sent back to manufacturers to repeat the cycle again.

17. CHEP's unique system, where high-quality pallets are constantly maintained, controlled, tracked, and reused, benefits the entire supply chain. Manufacturers receive consistent, high-quality pallets, reduced pallet expense, reduced transportation costs, and reduced product damage. Distributors and retailers benefit from faster loading and unloading, reduced product damage, and reduced pallet expense.

18. Importantly, the consistently high quality of CHEP pallets significantly reduces the number of accidents caused by faulty or damaged pallets. Safety is improved at all levels, from the manufacturer's plant to the distribution center to the retail store.

19. CHEP's system also removes costs and environmental burdens associated with waste disposal. CHEP estimates that its pallet program saves more than two million tons of solid waste each year. CHEP pallet materials that are no longer usable are mostly recycled into mulch for uses such as animal bedding and industrial sweeping compounds.

20. Given these benefits, it is not surprising that CHEP's pallet pool has been popular with manufacturers and distributors. CHEP continues to invest tens of millions of dollars per year to maintain and supplement its pallet pool.

21. ***CHEP never sells its pallets***. The success – indeed the existence – of CHEP's pallet pool rests on the fundamental principle that CHEP maintains ownership over all of its CHEP pallets, which permits CHEP to inspect its pallets regularly to ensure that they continue to meet CHEP's high and consistent quality and strength standards.

22. CHEP's agreements with manufacturers and distributors *expressly* provide that **CHEP owns the CHEP pallets** and that the CHEP pallets may never be bought and sold. All CHEP pallets are painted blue on their sides, are inscribed with CHEP's logo, and bear the words "PROPERTY OF CHEP." Many CHEP pallets also bear the company's toll-free telephone number.

23. Pursuant to its Rental Agreement, CHEP always retains absolute ownership of all of the CHEP pallets.

24. The leasing process begins with CHEP entering into an agreement with a manufacturer of goods in need of pallets.

25. In order to retain control and dominion over its pallets, CHEP also enters into pallet retention and return agreements with downstream commercial entities, such as distributors. Before a lessee can ship its product on a CHEP pallet to a downstream entity, it must first obtain approval from CHEP, or must know that the downstream entity is already a customer of CHEP.

26. CHEP typically charges its lessees a pallet rental fee on each CHEP pallet within the lessee's possession. In this manner, CHEP has created a "leasing pool" of CHEP pallets, and it typically falls on the secondary customer, not the lessee, to return CHEP pallets to CHEP.

27. CHEP makes a concerted effort to track the flow of its pallets. A large number of CHEP employees are dedicated in whole or in part to the protection, recovery, and retrieval of pallets, including logistics managers and coordinators, asset recovery managers and representatives, and office-based analysts and administrative personnel. In particularly egregious cases (such as this one), CHEP pursues legal action, both in cooperation with governmental enforcement authorities and independently, to protect, recover, and retrieve its pallets. In visiting an entity with which it does not have a contractual relationship, such as a recycler, CHEP will make overtures to that entity to consider entering into an agreement with CHEP. Inevitably and unfortunately, CHEP is unable to recover all of its pallets.

28. The approximate cost to manufacture each CHEP pallet is currently $26.00.

**L.A. Pallets' Breach of the Settlement Agreement**

29. L.A. Pallets is in the business of used-pallet collection, resale, recycling, repair or destruction.

30. In or around September 2021, CHEP learned that L.A. Pallets was engaged in the collection, resale, recycling, repair or destruction of CHEP pallets in violation of CHEP's property rights.

31. Ultimately, CHEP and L.A. Pallets entered into a settlement agreement ("Settlement Agreement") addressing the CHEP's claims with respect to L.A. Pallets' collection, resale, recycling, repair or destruction of CHEP's pallets. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit 1** and incorporated herein by this reference.

32. Unfortunately, L.A. Pallets failed to perform its obligations under the Settlement Agreement, including, but not limited to, L.A. Pallets' failure to comply with its agreement not to sell,

offer to sell, trade, exchange, and repair, destroy, dismantle or paint CHEP pallets, or do anything else inconsistent with CHEP's ownership rights.

33. The Settlement Agreement provided for recovery of attorneys' fees to the prevailing party in the event a civil action is filed to enforce the Settlement Agreement.

34. CHEP has performed all of its commitments and obligations and has satisfied all conditions under the Settlement Agreement.

**L.A. Pallets' Wrongful Possession of and Sale of CHEP Pallets**

35. On or about March 15, 2023, CHEP representatives visited L.A. Pallets' site at 13233 S. Alameda Street, Compton, California 90221 and observed CHEP pallets being loaded onto a trailer parked at the premises. CHEP's representative continued to conduct surveillance of the premises until L.A. Pallets' staff pulled the trailer into the property and locked the main gate.

36. On or about March 16, 2023, CHEP representatives again conducted surveillance of L.A. Pallets' premises and observed a trailer with L.A. Pallets markings leaving the location. CHEP representatives followed the trailer to Dynasty Shipping, located at 13400 Nelson Ave. E, City of Industry, California 91746. The L.A. Pallets trailer was observed parking on the Dynasty Shipping property. Therefter, CHEP representatives observed CHEP pallets being offloaded from the L.A. Pallets trailer. Inside the Dynasty Shipping warehouse, CHEP representatives observed about 900 CHEP pallets stacked throughout the property. True and correct photographs of the CHEP pallets observed inside Dynasty Shipping's facility are attached hereto as **Exhibit 2** and incorporated herein by this reference.

37. That same day, on or about March 16, 2023, CHEP's representative spoke with Dynasty Shipping Warehouse Manager Johnny Vladimir Quijano ("Mr. Quijano") and explained CHEP's ownership of the CHEP pallets and that CHEP's representative would need to take recovery all of the CHEP property. Mr. Quijano stated that he had purchased the CHEP pallets from L.A. Pallets and that he did not know it was illegal to purchase the CHEP pallets. Mr. Quijano then provided two invoices – one from L.A. Pallets dated February 23, 2023 for 595 pallets, and another from L.A. Pallets' representative, Ariel Miranda, dated March 16, 2023 for 504 pallets. True and Correct copies of the invoices are attached hereto as **Exhibits 3** and **4**, respectively, and incorporated herein by this reference.

38. That same day, CHEP's representative contacted the Los Angeles County Sheriff's Department and requested a crime report for Grand Theft and/or Embezzlement. Los Angeles County Sheriff's Deputies arrived at the property and detained the L.A. Pallets driver for questioning. After two hours of investigation, the L.A. Pallets driver was released by the Sheriff's deputies and a suspicious circumstances report was prepared (Report No. #923-02838-1412-444). A true and correct copy of the report Sheriff's report is attached hereto as **Exhibit 5**. A total of 900 CHEP pallets were recovered from Dynasty Shipping's property on March 16, 2023.

39. On information, belief, and observation, as of the date of this Complaint, L.A. Pallets still retains a multitude of CHEP pallets, though the number is not known because there are being hidden on L.A. Pallets's property and CHEP is denied access.

40. L.A. Pallets' continued sale of CHEP's pallets and continued failure to turn over CHEP's pallets constitutes a breach of the Settlement Agreement and has deprived CHEP of the lease proceeds from leasing the CHEP pallets at issue. Specifically, because of L.A. Pallets' wrongful sale and retention of CHEP's pallets, CHEP has been unable to lease the CHEP pallets wrongfully sold and held by L.A. Pallets to its customers through its pallet pool for the amount of time the CHEP pallets were possessed by L.A. Pallets or sold to third parties. As a result, CHEP has been deprived of the profits it would have made leasing such pallets to its customers, but for L.A. Pallets' wrongful retention and sale of CHEP's pallets, which such deprivation constitutes irreparable harm.

41. Additionally, CHEP is being irreparably harmed because many of the CHEP pallets in L.A. Pallets' possession have been inadequately repaired and do not meet the high-quality standards in which CHEP has devoted substantial resources and upon which CHEP's business and clients rely. By transferring such inadequately repaired CHEP pallets in commerce, L.A. Pallets has placed and is continuously placing CHEP's clients and consumers at unnecessary safety and health risk, which, consequently, places the CHEP brand at significant risk and exposes CHEP to liability for hazardous pallets. Further, CHEP is being irreparably harmed because L.A. Pallets' wrongful possession of CHEP's pallets has caused and is causing a shortage of pallets in CHEP's national pallets pool, which, consequently, impairs CHEP's ability to fulfill its contractual obligations to supply CHEP pallets to its customers.

42. The loss of CHEP pallets and the lease proceeds, the damage to the CHEP brand, and the risk to CHEP's customers and their health and safety constitute irreparable harm to CHEP. L.A. Pallets' improper and arbitrary conduct has far-reaching implications that are not only monetary, including disruption to CHEP's commitments to its customers, damages to its reputation and goodwill, and risk of liability for potentially hazardous pallets. CHEP's reputation and integrity for providing high-quality pallets are being impaired by L.A. Pallets' continuous refusal to return CHEP pallets. CHEP can never be adequately compensated in a damages award for these losses. This is both because the damages would be difficult or impossible to prove and difficult or impossible to measure.

43. Each day that L.A. Pallets continues to wrongfully possess, control, transfer, and/or otherwise exercise ownership over the CHEP pallets, CHEP is being irreparably harmed and is also suffering a loss of leasing proceeds, among other things.

## COUNT I

### BREACH OF CONTRACT – AGAINST ALL DEFENDANTS

44. CHEP restates, adopts, and incorporates each and every allegation in the preceding and foregoing paragraphs.

45. CHEP and L.A. Pallets entered into the Settlement Agreement on or about June 22, 2021.

46. L.A. Pallets breached the Settlement Agreement and continues to breach the Settlement Agreement.

47. L.A. Pallets has bought, sold, or otherwise distributed CHEP pallets in violation of the Settlement Agreement.

48. L.A. Pallets is refusing to turn over CHEP pallets in violation of the Settlement Agreement.

49. CHEP has been damaged by L.A. Pallets' breaches of the Settlement Agreement.

50. Accordingly, CHEP respectfully submits that it is entitled to a money judgment and attorneys fees.

Case 2:23-cv-05771-CAS-SK   Document 1   Filed 07/17/23   Page 10 of 14   Page ID #:10

## COUNT II

### CONVERSION – AGAINST ALL DEFENDANTS

51. CHEP restates, adopts, and incorporates each and every allegation in the preceding and foregoing paragraphs.

52. At the time L.A. Pallets came into possession of the CHEP pallets, L.A. Pallets did not own the CHEP pallets and did not have any right to possess the CHEP pallets.

53. L.A. Pallets has taken the CHEP pallets and continue to exercise ownership over those CHEP pallets despite notice that L.A. Pallets does not have any ownership rights with respect to the CHEP pallets and does not have any right to possess the CHEP pallets.

54. L.A. Pallets' actions are inconsistent with CHEP's ownership of the CHEP pallets.

55. CHEP has been damaged by L.A. Pallets' continued actions with respect to the CHEP pallets, including but not limited to L.A. Pallets' wrongful possession and wrongful transfers of the CHEP pallets.

56. Based on the foregoing, CHEP respectfully requests a money judgment in its favor and against L.A. Pallets in the amount of damages suffered due to L.A. Pallets' wrongful actions and any interest arising therefrom.

## COUNT III

### DECLARATORY JUDGMENT – AGAINST ALL DEFENDANTS

57. CHEP restates, adopts, and incorporates each and every allegation in the preceding and foregoing paragraphs.

58. This is an action for, among other things, declaratory relief pursuant to Section 2201 of title 28 of the United States Code.

59. CHEP avers that CHEP pallets are owned by CHEP, that CHEP pallets are solely and exclusively CHEP's property, and that L.A. Pallets does not have any ownership or other rights to the CHEP pallets.

60. However, L.A. Pallets takes the position that it owns and/or has the right to possess or exercise ownership over the CHEP pallets.

9
COMPLAINT
Case No. 2:23-cv-05771
71693297;1

61. Accordingly, an actual controversy exists between CHEP and L.A. Pallets relating to their legal rights and duties arising out of the main action. A declaration of rights and duties as to the responsibilities of CHEP and L.A. Pallets is appropriate at this time in order to permit CHEP to ascertain its rights and duties with respect to CHEP pallets. No adequate remedy exists at law other than that prayed for, by which the respective rights and responsibilities of CHEP and L.A. Pallets can be ascertained.

62. In light of the foregoing, CHEP is entitled to the declaratory relief sought herein because, *inter alia*, (i) there is a present and actual controversy based upon the facts alleged above; (ii) CHEP's rights are dependent upon the facts alleged above; (iii) L.A. Pallets has an actual, present, adverse, and antagonistic interest in this matter; (iv) all antagonistic and adverse interests are before the Court by the proper process; and (v) the issues raised by CHEP are not propounded from curiosity and the relief sought is not merely the rendering of legal advice by the Court; there is a *bona fide* need for a declaration based on the present, ascertainable facts.

63. CHEP has suffered and/or faced an actual or imminent injury in fact that is traceable to L.A. Pallets' wrongful conduct, which is likely to be redressed by a favorable decision, absent the issuance of declaratory relief, CHEP will be irreparably injured.

64. In sum, CHEP is entitled to a judgment declaring that CHEP has sole and exclusive ownership over the CHEP pallets, and awarding CHEP such other relief, including permanent injunctive relief, as the Court deems just and proper.

## COUNT IV

## REPLEVIN – AGAINST ALL DEFENDANTS

65. CHEP restates, adopts, and incorporates each and every allegation in the preceding and foregoing paragraphs.

66. L.A. Pallets is wrongfully in possession of CHEP's pallets, and was so at the time of the filing of this Complaint.

67. CHEP has demanded that L.A. Pallets return CHEP's pallets, but L.A. Pallets has refused.

68. CHEP owns and/or has paramount proprietary interests in the CHEP pallets currently in L.A. Pallets' possession.

69. CHEP has the exclusive right of immediate possession of the CHEP pallets.

70. L.A. Pallets does not have any claim of ownership or possession to CHEP's pallets.

71. CHEP did not, and has not, consented to allow L.A. Pallets to retain possession of CHEP's pallets.

72. There is no contractual, legal, or equitable justification which permits L.A. pallets to continue to retain CHEP's pallets.

73. L.A. Pallets unlawfully and without approval of CHEP has retained CHEP's pallets and must be ordered to immediately return CHEP's pallets to CHEP.

**PRAYER**

WHEREFORE, CHEP respectfully prays that this Court:

A. On Count I:

    a. Enter a money judgment in favor of CHEP and against L.A. Pallets to the extent that L.A. Pallets has breached any agreement with CHEP by its actions as set forth in this Complaint.

    b. Enter a judgment in favor of CHEP and against L.A. Pallets for all fees incurred in bringing and relating to this action; all interest accrued on the amounts owed by L.A. Pallets; and any and all other monetary or equitable relief that this Court deems just and proper under applicable law.

    c. Issue such relief as the Court deems just and proper.

B. On Count II:

    a. Enter a judgment declaring that CHEP has sole and exclusive ownership over the CHEP pallets.

    b. Entering a permanent injunction prohibiting L.A. Pallets from purchasing, selling, transferring, or using CHEP pallets and requiring that such CHEP

pallets be turned over to CHEP and allowing CHEP regular inspections to confirm compliance with such injunction.

C. On Count III:

    a. Enter a money judgment in favor of CHEP and against L.A. Pallets in the amount of general and consequential damages, including lost profits, suffered as a result of L.A. Pallets' wrongful conversion and other actions related to the CHEP pallets.

D. On Count IV:

    a. For an order authorizing the issuance of a writ of replevin requiring the United States Marshal to take possession of the CHEP pallets and to deliver them to CHEP.

E. On all Counts:

    a. Enter a judgment in favor of CHEP and against L.A. Pallets for all fees incurred in bringing and relating to this action; all interest accrued on the amounts owed by L.A. Pallets; and any and all other monetary or equitable relief that this Court deems just and proper under applicable law.

    b. Issue such relief as the Court deems just and proper.

DATED: July 17, 2023

**AKERMAN LLP**

By: _____
Evelina Gentry
Jonathan Turner
Samual Miller

*Attorneys for Plaintiff*
*CHEP USA*

# VERIFICATION

I have read the foregoing VERIFIED COMPLAINT FOR BREACH OF CONTRACT and know its contents.

☐   I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and to those matters I believe them to be true.

☒   I am ☐ an officer ☐ a partner ☒ National Asses Protection and Security Manager of CHEP USA, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☒   I am informed and believe and, on that ground, allege that the factual matters stated in the foregoing document are true.

☐   The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐   I am one of the attorneys for _____, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on __July 17, 2023__, at __1004 Hours__

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

__Mario Birsa__          __/s/ Mario Birsa__
Name                      Signature